IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

|  |  |
|---|---|
| RICHARD B. NAPIER,<br><br>Plaintiff,<br><br>vs.<br><br>FRANK J. BISIGNANO,<br>Commissioner of Social Security,<br><br>Defendant. | CV 25-25-BLG-TJC<br><br><br>**ORDER** |

Plaintiff Richard B. Napier ("Plaintiff") filed a complaint pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting judicial review of the final administrative decision of the Commissioner of Social Security ("Commissioner") regarding the denial of his claim for disability benefits.  (Doc. 1.)  The Commissioner subsequently filed the Administrative Record ("A.R.").  (Doc. 5.)

Presently before the Court is Plaintiff's motion for summary judgment, seeking reversal of the Commissioner's denial of disability benefits and remand for an award of disability benefits, or alternatively for further administrative proceedings.  (Doc. 7.)  The motion is fully briefed and ripe for the Court's review. (Docs. 9, 10.)

For the reasons set forth herein, and after careful consideration of the record and the applicable law, the Court finds the ALJ's decision should be **REVERSED**

1

and **REMANDED** for further administrative proceedings.

## I.      PROCEDURAL BACKGROUND

Plaintiff filed an application for disability insurance benefits on December 20, 2021.  (A.R. 17.)  A hearing was held before Administrative Law Judge Robert Freedman (the "ALJ") on February 6, 2024.  (A.R. 36–75.)  On February 14, 2024, the ALJ issued a written decision finding Plaintiff not disabled.  (A.R. 17–29.) Plaintiff requested review of the decision, and the Appeals Council denied Plaintiff's request.  (A.R. 1–3.)  Thereafter, Plaintiff filed the instant action.  (Doc. 1.)

## II.     LEGAL STANDARDS

### A.      Scope of Review

The Social Security Act allows unsuccessful claimants to seek judicial review of the Commissioner's final agency decision.  42 U.S.C. §§ 405(g), 1383(c)(3).  The scope of judicial review is limited.  The Court must affirm the Commissioner's decision unless it "is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Id.* (citing *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)).  "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."

*Flaten v. Sec'y of Health & Hum. Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  In considering the record as a whole, the Court must weigh both the evidence that supports and detracts from the ALJ's conclusions.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).  The Court must uphold the denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Flaten*, 44 F.3d at 1457 ("If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary.").  But even if the Court finds that substantial evidence supports the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a conclusion.  *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

## B.    Determination of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show two things: (1) the claimant suffers from a medically determinable physical or mental impairment that can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders

the claimant incapable of performing the work he previously performed, or any other substantial gainful employment which exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A). A claimant must meet both requirements to be classified as disabled. *Id*.

The Commissioner makes the assessment of disability through a five-step sequential evaluation process. If an applicant is found to be "disabled" or "not disabled" at any step, there is no need to proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005) (quoting *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000)). The five steps are:

1. Is claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f).

5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

Although the ALJ must assist the claimant in developing a record, the claimant bears the burden of proof during the first four steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098, n.3 (9th Cir. 1999) (citing 20 C.F.R. § 404.1512(d)).

## III.   THE ALJ'S FINDINGS

The ALJ followed the sequential evaluation process in considering Plaintiff's claim. First, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of January 6, 2020. (A.R. 20.)

Second, the ALJ found that Plaintiff had the following medically determinable severe impairments: status-post fracture to the cervical spine and status-post multiple surgeries to the cervical spine, cervical foraminal stenosis, degenerative disc disease of the cervical spine, cervical spondylosis, and ulnar neuropathy status-post ulnar transposition. (A.R. 20.)

The ALJ also found Plaintiff had the following medically determinable physical impairments that were nonsevere: status-post right knee total arthroplasty, gastroesophageal reflux disease, hypertension, hyperlipidemia, osteoarthritis of the bilateral shoulders and knees, and obstructive sleep apnea. (A.R. 20.) Additionally, the ALJ found Plaintiff had the medically determinable mental impairment of depressive disorder that was nonsevere. (A.R. 21.)

Third, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (A.R. 23–24.)

Fourth, the ALJ concluded Plaintiff has the RFC to:

> [P]erform light work as defined in 20 CFR 404.1567(b) except the use of ramps and stairs is limited to occasional and the use of ladders, ropes, and scaffolds is limited to never. Tasks requiring balancing, stooping, crouching, crawling, and kneeling are all limited to no more than occasional. Tasks requiring bilateral overhead reaching tasks are limited to never, but there are no other reaching limitations.

(A.R. 24.)

The ALJ next found that Plaintiff was able to perform past relevant work as a grant coordinator.  (A.R. 28.)  Thus, the ALJ found that Plaintiff was not disabled.  (A.R. 28.)

## IV.   DISCUSSION

In his opening brief, Plaintiff identified the following issues for review:

> 1. Whether the ALJ failed to include [Plaintiff's] mental limitations in the RFC submitted to the vocational expert, in violation of SSR 96-8p.

> 2. Whether the decision of the ALJ denying [Plaintiff's] claim for disability benefits and credibility finding relative to pain and limitations lacks substantial evidence in the record in view of the specificity requirements of *Brown-Hunter v. Colvin.*

> 3. Whether the ALJ erred in failing to incorporate [Plaintiff's] neck limitations admitted by the ALJ, into the vocational consultant's

6

hypothetical question.

(Doc. 7 at 5.)

The arguments in Plaintiff's briefs do not align seamlessly with the issues identified for review.  Plaintiff also appears to raise additional issues regarding the ALJ's consideration of the duration and frequency of Plaintiff's need for medical treatment, his mental limitations, and whether the ALJ properly evaluated the relevant medical opinions.  Accordingly, the Court will discuss the issues Plaintiff identifies, as well as additional issues that Plaintiff appears to raise in his briefs, in the following order: (1) whether the ALJ properly evaluated medical opinion evidence; (2) whether the ALJ properly evaluated Plaintiff's subjective symptom testimony; (3) whether the RFC properly accounted for Plaintiff's physical impairments, treatment needs, and mental impairments; and (4) whether Plaintiff's impairments and treatment needs were properly incorporated into the hypotheticals posed to the vocational expert ("VE").

### A.    Consideration of Medical Opinion Evidence

Plaintiff references the regulation for evaluating medical testimony[1] and suggests the ALJ erred in failing to properly evaluate the medical opinions in this

---

[1] Plaintiff cites to a non-existent regulation "20 C.F.R. § 404.920c."  (Doc. 7 at 20.) This is likely a scrivener's error, as 20 C.F.R. § 416.920c is the regulation that governs how the Commissioner considers and articulates medical opinion evidence.

case.  But Plaintiff does not specify which medical providers' opinions he is referring to.  (Doc. 7 at 20.)  Because Plaintiff makes only a cursory reference to this issue, with no accompanying argument, the Court finds he has not sufficiently placed the ALJ's consideration of the medical opinions in issue.  *See Poynter v. Saul*, 2020 WL 1304489, at *15 (D. Nev. Mar. 19, 2020) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones.").

The Court, therefore, finds no error regarding the ALJ's consideration of the medical opinion evidence.

### B.    Evaluation of Subjective Symptom Testimony

Plaintiff argues that the ALJ improperly discounted his subjective symptom testimony regarding his physical limitations.

A claimant's testimony is analyzed in two steps.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine whether the claimant has presented objective evidence of an impairment or impairments that could reasonably be expected to produce the pain or other symptoms alleged.  *Id.* Second, if there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ provides "specific, clear and convincing

reasons" for doing so. *Id.* "In order for the ALJ to find [the claimant's] testimony unreliable, the ALJ must make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'" *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). As noted by the Ninth Circuit, "[t]his is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 925 (9th Cir. 2002)).

To assess a claimant's subjective symptom testimony, the ALJ may consider (1) ordinary credibility techniques, (2) unexplained or inadequately explained failure to seek or follow treatment or to follow a prescribed course of treatment, and (3) the claimant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Fair v. Bowen*, 885 F.2d 597, 603–04 (9th Cir. 1989).

In order for the ALJ to use a claimant's daily activities to make an adverse credibility determination, these activities must either meet the threshold for

transferable work skills or contradict the claimant's testimony about their limitations. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016. *See also Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("[T]he mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from [his] credibility as to [his] overall disability. One does not need to be 'utterly incapacitated' in order to be disabled.") (quoting *Fair*, 885 F.2d at 603). Thus, an ALJ cannot use "a few random daily activities" to discredit a claimant's testimony absent "findings as to the pervasiveness of these activities, what they entailed, or how the physical functions displayed during the activities are transferable to a work setting." *Smith v. Berryhill*, 704 F. App'x 652, 653 (9th Cir. 2017).

An ALJ may also take into consideration the lack of objective medical evidence. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196–97 (9th Cir. 2004). But "an ALJ cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive medical evidence fully corroborating every allegation within the subjective testimony." *Smartt v.*

*Kijakazi*, 53 F.4th 489, 495 (9th Cir. 2022) (internal punctuation omitted); *accord Vertigan*, 260 F.3d at 1049 ("The fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it.").

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that Plaintiff's statements about the debilitating effects of his symptoms were not entirely consistent with the medical evidence in the record.  (A.R. 25–28.) Therefore, the ALJ was required to cite specific, clear, and convincing reasons for rejecting Plaintiff's subjective testimony about the severity of his symptoms.  The Court finds the ALJ did so.

### 1. Physical Limitations

As to Plaintiff's physical symptoms related to his neck and attendant pain, the ALJ found that the record evidence did not support functional limitations to the degree of severity Plaintiff alleges.  First, the ALJ stated that some of Plaintiff's activities are inconsistent with his allegations of debilitating impairments.  (A.R. 26.)  In contrast to Plaintiff's testimony that he is unable to endure long periods of sitting, the ALJ pointed to his ability to tolerate plane rides up to five hours long to visit Alaska, Hawaii, and Mexico.  (A.R. 26.)  In support of his finding that Plaintiff's physical limitations do not preclude a light level of exertion, the ALJ

pointed to Plaintiff's testimony that he is able to take out the trash, wash dishes, do laundry, drive, use a smartphone, do his own grocery shopping, and prepare his own meals.  (A.R. 26.)  Additionally, the ALJ discussed Plaintiff's testimony regarding his ability to move grocery bags from his shopping cart to his car and from his car to his home, as well as lift bags of dog food weighing 25–40 pounds.  (A.R. 27.)  In further support of his finding Plaintiff capable of light exertion, the ALJ also noted that Plaintiff did physical therapy involving stretching and strengthening exercises, and cited to Plaintiff's medical records, which show consistent findings of normal gait.  (A.R. 26–27.)

The ALJ also discussed reports from state agency consultants who had previously determined that Plaintiff was not disabled.  (A.R. 27–28.)  The ALJ found some aspects of these reports persuasive and supported by the record, such as findings regarding Plaintiff's ability to stand and walk for up to six hours and to lift objects up to 20 pounds.  (A.R. 27.)  But the ALJ also dismissed findings in the reports, such as Plaintiff's ability to reach overhead bilaterally, as unsupported by the objective medical evidence in the record.  (A.R. 28.)

Finally, the ALJ emphasized that when Plaintiff's counsel asked him to specify at the hearing the greatest impediment to him returning to his previous job, Plaintiff mentioned problems with short-term memory, rather than any physical impairment.  (A.R. 27.)

In sum, the ALJ pointed to specific evidence both from Plaintiff's medical records and from his hearing testimony that undercuts some of Plaintiff's subjective reports about his physical impairments.  There is adequate support for the ALJ's conclusions in the record.  (*See* A.R. 49–50 (Plaintiff's testimony about his stretching exercises); A.R. 53–54, 57 (Plaintiff's testimony about his activities of daily living); A.R. 54–56 (Plaintiff's testimony about his travel); A.R. 63 (Plaintiff's testimony that he thinks his biggest impediment to returning to work is his short-term memory); A.R. 78, 80–81, 83 (state disability expert reports); A.R. 79, 369, 387, 697, 770, 930, 986, 1036 (findings of normal or steady gait in Plaintiff's medical records).)

Plaintiff argues that the ALJ's "reference to travel fails to provide the specificity required," and also, somewhat confusingly, that "periodic travel was not discussed by the ALJ. . . ."  (Doc. 10 at 6.)  Plaintiff contends the ALJ erred in not including "references to special arrangements or increased pain or pain medication" regarding Plaintiff's travel.  (*Id.* at 6–7.)  In support, Plaintiff cites *Howard v. Heckler*, 782 F.2d 1484 (9th Cir. 1986), a case in which the Ninth Circuit reversed the Appeals Council's reversal of an ALJ's finding of disability. The narrow issue the court considered in that case was whether the Council had an adequate basis for rejecting the ALJ's credibility findings.  *Id.* at 1487.  Although the court stated that it "seems" as though the Council used the claimant's "capacity

13

to engage in periodic restricted travel" as the reason for discrediting his claim of disability, *id.* at 1488, the case does not stand for the proposition that the ability to engage in periodic travel is an impermissible basis for an ALJ to discredit a claimant's testimony as to their limitations.

Although Plaintiff asserts that the ALJ's findings regarding his travel lack specificity, the ALJ noted that Plaintiff's ability to take long plane rides discredited his testimony regarding the alleged debilitating effects of his impairments.  (A.R. 26.)  Moreover, unlike the claimant in *Howard*, who specified that he needed to make frequent stops to do exercises recommended by his doctor while traveling in his motorhome, 782 F.2d at 1485, Plaintiff did not assert that his ability to travel on a plane was in any way restricted (*see* A.R. 54–56).

Plaintiff also argues that the ALJ's discussion of his activities of daily living do not rise to the level of specificity required by law because there was not a finding as to "as to the amount of time involved, the number of times per day or per week or per month the activity is performed, and whether the activity could be transferable to a work setting." (Doc. 10 at 6.)  Plaintiff does not cite to any authority, nor is the Court able to locate any, that mandates the ALJ make an explicit finding as to the length of time each day, week, or month that a claimant engages in certain activities of daily living for those activities to form the basis for an adverse credibility determination.

Instead, the Ninth Circuit has made clear that an ALJ is permitted to consider whether a claimant engages in daily activities that are inconsistent with their alleged symptoms. *Smartt*, 53 F.4th at 499 ("Even if the claimant experiences some difficulty or pain, [their] daily activities 'may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.'" (quoting *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012)). Here, the ALJ found that Plaintiff's activities contradicted his testimony about his physical limitations. (A.R. 26–28.) Moreover, the ALJ made specific findings that Plaintiff's daily activities are consistent with a light exertional level. (A.R. 27.) Thus, contrary to Plaintiff's assertions, the ALJ directly addressed the transferability of these activities to a work setting. Accordingly, because "[i]t is not the court's role to 'second-guess' an ALJ's reasonable interpretation of a claimant's testimony," *Smartt*, 53 F.4th at 500, the Court finds the ALJ properly supported his reasons for discounting Plaintiff's testimony regarding the extent of his physical limitations.

## 2. Mental Limitations

As to Plaintiff's secondary mental impairments, the ALJ provided sufficiently specific reasons for discounting Plaintiff's allegations regarding the severity of his symptoms.

/ / /

15

In rejecting Plaintiff's testimony regarding issues with his memory, the ALJ pointed to the fact that Plaintiff's medical history does not indicate he was diagnosed with a memory impairment, nor has he sought treatment for such an impairment. (A.R. 21.)  Moreover, the ALJ noted that Plaintiff repeatedly denied experiencing side effects from his pain medications in appointments with his treatment providers. (A.R. 22.)  Additionally, the ALJ cited to Plaintiff's medical records, which consistently note that he "presents as fully alert and oriented to all spheres and has normal thought content, memory, thought processes, and judgment . . . [and] is able to follow commands." (A.R. 22.)  The ALJ determined that these findings accord with Plaintiff's testimony about his activities of daily living, and support a finding that Plaintiff is no more than mildly limited in concentrating, persisting, or maintaining pace. (A.R. 22.)

Again, there is adequate support for the ALJ's conclusions in the record. (*See* A.R. 927, 1131, 1138, 1263, 1272 (notations in Plaintiff's medical records that he denies side effects from his medications); A.R. 78, 982, 1147, 1270 (findings in the medical records that Plaintiff is alert and oriented); A.R. 80, 923 (notations in the medical records that Plaintiff is negative for memory loss and/or denies memory loss); A.R. 346 (Plaintiff's report to a medical provider that he can concentrate fully with only slight difficulty).)

///

Plaintiff essentially argues a different interpretation should be drawn from the medical records and his testimony, and that the ALJ should have found him to have moderate limitations in concentrating, persisting, and maintaining pace.  But the Court may not substitute its judgment for that of the ALJ.  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).  Rather, it "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation."  *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

In sum, the Court finds the ALJ's evaluation of Plaintiff's testimony is properly supported by specific, clear and convincing reasons.

### C.    Determination of RFC

Plaintiff next argues that the ALJ's RFC determination failed to incorporate the full range of his physical limitations, treatment needs, and mental limitations. Specifically, Plaintiff alleges: (1) the ALJ failed to include the full extent of limitations to Plaintiff's range of motion in the cervical spine; (2) the ALJ did not analyze whether the frequency and duration of Plaintiff's treatment needs would preclude engaging in substantial gainful activity; and (3) the ALJ did not incorporate Plaintiff's limitations in concentration, persistence, and pace resultant from Plaintiff's medically determinable mental impairments.

The RFC is a measure of "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1); *see also* SSR 96-8p, 1996 WL 374184, at

*2.  Social Security Ruling 96-8p requires the ALJ to assess a claimant's RFC based on "*all* of the relevant evidence in the case record."  SSR 96-8p, 1996 WL 374184, at *5 (emphasis in original).  The ALJ is not permitted to "cherry pick" from the record to determine the RFC.  *See Hoffschneider v. Kijakazi*, 2022 WL 3229989, at *1 (9th Cir. Aug. 10, 2022) (quoting *Garrison*, 759 F.3d at 1017 n.23).  Instead, in assessing the RFC, the ALJ must consider the "limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"  SSR 96-8p, 1996 WL 374184, at *5.  When a claimant's impairments are supported by substantial evidence in the record, the ALJ must either consider them in the RFC or cite reasons for excluding them.  *See Robbins*, 466 F.3d at 886.

### 1.    **Physical Impairments – Cervical Spine**

Plaintiff alleges the ALJ erred because he "acknowledged [Plaintiff] has range of motion limitations in his neck, but he included no such limitations in his residual functional capacity."  (Doc. 7 at 19.)  Accordingly, Plaintiff contends that the RFC is not supported by substantial evidence because the ALJ did not "include head flexion, rotation, or other limitations of the range of motion [in Plaintiff's head and neck] despite finding the claimant has 'very limited range of motion of the cervical spine.'"  (*Id.* at 19–20.)

The Court finds the ALJ adequately considered Plaintiff's cervical limitations.  The ALJ chronologically evaluated the medical record regarding

limitations in Plaintiff's range of motion in the head and neck. (A.R. 25–26.) The ALJ also considered the findings of state agency consultants (A.R. 27–28) as well as Plaintiff's testimony (A.R. 26–27). Based on his consideration and discussion of the record, the ALJ included limitations in the RFC specifically to accommodate Plaintiff's cervical symptoms, including his reduced range of motion. (A.R. 28 ("To accommodate his symptoms of tenderness throughout the spine and reduced range of motion of the neck with pain in his shoulders, the residual functional capacity limits him to never climbing ladders, ropes, or scaffolds or reaching overhead bilaterally and otherwise performing only occasional postural activities.").)

Thus, the ALJ considered Plaintiff's limited range of motion in his neck and incorporated the related limitations that he found to be supported by the record evidence into the RFC. (A.R. 24–25.) Accordingly, the ALJ adequately considered Plaintiff's cervical limitations in the RFC.

### 2.    Treatment Needs

Plaintiff argues that the ALJ improperly failed to account for the frequency and duration of Plaintiff's treatment needs, including time off for surgeries. (Doc. 7 at 3.)

Social Security Ruling 96-8p requires that, where a claimant has presented evidence that their medical treatment may potentially inhibit their ability to work,

the RFC assessment incorporate the effects of the treatment's frequency, duration, and disruption to routine. SSR 96-8p, 1996 WL 374184, at *5; *Jones v. Kijakazi*, 2022 WL 595729, at *4 (D. Mont. Feb. 28, 2022). An ALJ's failure to consider the effect of a claimant's treatment needs constitutes reversible error. *See, e.g., Tyler v. Saul*, 2021 WL 2562492, at *6 (D. Mont. June 23, 2021) (finding ALJ erred by failing "to note, weigh, or otherwise consider the frequency of treatment entirely in their decision"); *Mariah v. Saul*, 2021 WL 1660947, at *8 (D. Mont. April 28, 2021) (remanding action where the ALJ failed to consider the plaintiff's treatment needs in assessing the RFC); *Epps v. Harris*, 624 F.2d 1267, 1273 (5th Cir. 1980) (finding the ALJ's decision was not supported by substantial evidence because the effect of the claimant's treatment regimen for back injury was ignored).

"When a plaintiff has presented evidence sufficient to establish the possibility that the frequency of his medical appointments may inhibit his ability to work on a regular and continuing basis, the Court should remand to the ALJ for development in the record and the appropriate consideration." *Childs v. Kijakazi*, 2022 WL 325913, at *8 (D. Mont. Feb. 3, 2022) (cleaned up) (quoting *Bourcier v. Saul*, 856 F. App'x 687, 691 (9th Cir. 2021)). Nevertheless, frequent medical appointments do not, on their own, constitute a disability. *Goodman v. Berryhill*, 2017 WL 4265685, at *3 (W.D. Wash. Sept. 25, 2017). For the frequency of a

claimant's treatment to be considered disabling, the frequency must be necessitated by a claimant's medical condition and substantiated by evidence. *Id.* In evaluating whether a claimant's treatment needs prevent substantial gainful activity, the ALJ should consider "whether [the claimant] could schedule medical appointments outside of working hours or grouped in such a way that he would not be precluded from working . . . [and] also consider whether the need for the number of appointments would be ongoing, or would subside." *Childs*, 2022 WL 325913, at *8 (internal citations omitted). No authority requires "the ALJ's RFC analysis to refer specifically to the number of appointments [the claimant] attended. . . ." *Abrahams v. Kijakazi*, 2023 WL 4491744, at *1 (9th Cir. July 12, 2023).

The VE testified that taking more than one day off per month would be work-preclusive. (A.R. 70.) Thus, Plaintiff asserts that, had the ALJ taken into account the frequency of his treatment needs, a finding that he is disabled would have been mandated because he "required average annual care 20 times in 2020 and 17 times annually in 2021, in addition to hospitalization for surgeries as well as time off after surgery." (Doc. 7 at 7.) Even assuming this is an accurate reflection of the number of medical appointments Plaintiff had in 2020 and 2021, Plaintiff fails to cite to any medical opinions or evidence in the record showing that he would miss two or more days of work per month due to medical care. Moreover, there is no evidence to establish that Plaintiff would be required to

21

attend medical appointments during work hours or that his appointments would cause him to miss an entire day of work.  Nor is there evidence that his treatment needs in 2020 and 2021 are representative of his ongoing or future treatment needs. Thus, the evidence in the record does not establish that Plaintiff's medical treatment needs would cause him to exceed the off-task limitation presented by VE.

Accordingly, the ALJ did not err in failing to account for the frequency and duration of the Plaintiff's treatment needs in the RFC.

### 3.      Mental Impairments

Plaintiff next argues that the "ALJ committed reversible error because neither the written discussion of [Plaintiff's] work-related capabilities nor the hypothetical questions posed to the vocational expert accounted for [Plaintiff's] moderate limitations in concentration, persistence, and pace secondary to his chronic pain symptoms and side effects to his medications." (*Id.* at 11.)

As noted above, the ALJ determined that Plaintiff's mental impairments were not severe, and found that his limitations in concentration, persistence, and pace were mild.  Nevertheless, any limitation posed by his mental impairments must be considered.  "An ALJ must consider the impact of all impairments on a claimant's RFC, whether they were deemed severe or not severe at step two. . . . [I]mpairments and any limitations they may cause do not drop out of the analysis

simply because the impairment was deemed nonsevere at step two." *Diane v. Kijakazi*, 2023 WL 7301969, at *2 (C.D. Cal. Nov. 6, 2023) (internal citations omitted). "[W]hile the ALJ [is] free to reject [a claimant's] testimony as not credible, there [is] no reason for the ALJ to disregard his own finding that [a claimant's] nonsevere [impairments] caused some 'mild' limitations in the areas of concentration, persistence, or pace." *Hutton v. Astrue*, 491 F. App'x 850, 850–51 (9th Cir. 2012).

Here, the ALJ found at step two that Plaintiff has a nonsevere medically determinable mental impairment, and that Plaintiff has mild limitations in the area of concentrating, persisting or maintaining pace. (A.R. 21–23.) Although at step two the ALJ acknowledged that the "mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment," the ALJ only included the boilerplate statement that "[t]he following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis," without any further discussion. (A.R. 23.) "Thus, it is not clear to this Court whether the ALJ considered his step two finding of a mild limitation in concentration, persistence, and pace and had a good reason for concluding that it did not affect Plaintiff's RFC, or whether he forgot about that mild limitation all together [sic]." *Diane*, 2023 WL 7301969, at *2.

23

Accordingly, the ALJ erred by failing to account for Plaintiff's mental impairments in his determination of the RFC.  *See id.* at \*5 ("[H]aving found the existence of an impairment that mildly limits a claimant in some way, the ALJ does have to show his work as to why that limitation has no bearing on the RFC. Because there is no indication that the ALJ did so here, the ALJ erred."); *see also Aida I. v. Saul*, 2020 WL 434319, at \*4 (S.D. Cal. Jan. 28, 2020), *report and recommendation adopted by* 2020 WL 1905356 (S.D. Cal. Apr. 17, 2020) ("[T]he ALJ's nonseverity finding merely meant that plaintiff's mental impairments did not cause more than minimal limitation in her ability to perform basic mental work activities. . . . It does not follow that the ability to perform basic mental work activities equates to the ability to perform skilled work.").

## D.    Vocational Expert's Hypotheticals

Plaintiff argues the ALJ failed to incorporate all of his impairments and limitations into the hypothetical questions posed to the VE.  Plaintiff presents substantially the same arguments regarding alleged errors in the hypotheticals to the VE as he does regarding alleged errors in the RFC: the questions to the VE failed to set out the full scope of limitations to Plaintiff's range of motion in his head and neck; the questions failed to incorporate Plaintiff's alleged treatment needs; and the questions did not set out Plaintiff's alleged moderate mental limitations.

Hypothetical questions posed to the vocational expert must set out all of the claimant's limitations and restrictions. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). "The testimony of a vocational expert 'is valuable only to the extent that it is supported by medical evidence.'" *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989) (quoting *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982)). That said, "in hypotheticals posed to a vocational expert, the ALJ must only include those limitations supported by substantial evidence." *Robbins*, 466 F.3d at 886.

As discussed above, the Court has determined both that the ALJ adequately supported his reasons for determining the physical limitations in the RFC, and that the ALJ did not err by failing to include Plaintiff's alleged treatment needs in the RFC. Accordingly, the hypotheticals properly accounted for all of Plaintiff's physical limitations and treatment needs that the ALJ found to be supported by evidence in the record. But because the ALJ erred by failing to account for Plaintiff's mental limitations in the RFC, the Court must determine whether this error was harmless or whether it infected the hypotheticals to the VE such that remand is warranted.

In *Diane v. Kijakazi*, 2023 WL 7301969 (C.D. Cal. Nov. 6, 2023), the court dealt with a very similar scenario to the one presented here. There, as here, the ALJ found the claimant to have mild limitations in concentration, persistence, and

pace, but did not incorporate these into the RFC. *Id.* at *2. The ALJ subsequently did not include these limitations in hypotheticals posed to the VE, and the VE found that the claimant was capable of returning to her skilled work at a specific vocational preparation score ("SVP") of 7. *Id.* at *5. The court found that this error was not harmless because "highly skilled jobs are more likely to be impacted by limitations, even mild ones, in mental capacity. Had the ALJ decided to incorporate any limitation in the RFC to account for Plaintiff's mild impairment in concentration, persistence, and pace, it may well have affected the vocational expert's opinion that she could return to her prior work." *Id.* Many other courts have found reversible error under substantially similar circumstances. *See, e.g., Sylvester H. v. Kijakazi*, 2022 WL 4466717, at *8 (C.D. Cal. Sep. 26, 2022); *Barrera v. Berryhill*, 2018 WL 4216693, at *5 (C.D. Cal. Sep. 5, 2018); *Gates v. Berryhill*, 2017 WL 2174401, at *3 (C.D. Cal. May 16, 2017); *Smith v. Colvin*, 2015 WL 9023486, at *9 (N.D. Cal. Dec. 16, 2015); *Kramer v. Astrue*, 2013 WL 256790, at *3 (C.D. Cal. Jan. 22, 2013).

Here, based on the hypotheticals posed by the ALJ, the VE testified that Plaintiff would be able to return to his past work as a grant coordinator, which has an SVP of 8. (A.R. 68–70.) But the hypotheticals posed by the ALJ to the VE only set out physical limitations. (*See* A.R. 68–70.) When Plaintiff's attorney posed a hypothetical to the VE including certain mental limitations, the VE

testified that work at an SVP of 8 would be precluded. (A.R. 73.) While Plaintiff's hypothetical to the VE set out more limitations in mental functioning than the ALJ found were supported by the record, "the Court cannot determine how the VE would have testified had the specific mild functional limitations [the ALJ found supported] been included in the hypotheticals posed." *Aida I.*, 2020 WL 434319, at *5.

Accordingly, the Court cannot find that the ALJ's error in excluding mental limitations from the RFC and neglecting to include these limitations in hypotheticals posed to the VE was harmless. The inclusion of these limitations may have caused the VE to determine that Plaintiff was precluded from returning to his past work as a grant coordinator. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) ("An error is harmless only if it is 'inconsequential to the ultimate nondisability determination.'") (quoting *Molina*, 674 F.3d at 1115).

### E.     Remand or Reversal

"[T]he decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court." *Reddick*, 157 F.3d at 728. If the ALJ's decision "is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)). "If additional

proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded.  Where, however, a rehearing would simply delay receipt of benefits, reversal [and an award of benefits] is appropriate." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).

Here, the Court finds that remand is appropriate as it may be possible to remedy defects in the ALJ's decision.

## V.   CONCLUSION

Based on the foregoing,  **IT IS ORDERED** that the Commissioner's decision is **REVERSED** and this matter be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

DATED this 23rd day of March, 2026.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge